# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**GREGORY STEVEN PALLADINO**,                    Chapter 7
Debtor                                           Case No. 14-15774-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**KENNETH and TERESA NASIF**,
    Plaintiffs,
v.                                               Adv. P. No. 15-1055
**GREGORY STEVEN PALLADINO**,
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The issues presented in this adversary proceeding are whether the elements pertinent to the definition of larceny under Mass. Gen. Laws ch. 266, § 30 and 11 U.S.C. § 523(a)(4) are synonymous, and whether the Court is bound by the Defendant's plea of guilty to two counts of larceny in state court such that the Plaintiffs' debt is excepted from discharge under 11 U.S.C. § 523(a)(4). The issues arise in the context of a Motion for Summary Judgment filed by Gregory Steven Palladino (the "Defendant," the "Debtor," or "Palladino") with respect to the "Complaint Objecting to Dischargeability of Debt pursuant to 11 U.S.C. § 523(a)(2)(A& B) and (a)(4)" filed by Kenneth and Teresa Nasif (the "Plaintiffs"). The Plaintiffs filed an Opposition to the Defendant's Motion, and the Defendant filed a Motion to Supplement Exhibits to his Motion for Summary Judgment.

1

The Court heard the Motion for Summary Judgment, the Opposition, and the Motion to

Supplement Exhibits on September 13, 2016, and in the absence of objections, granted the

Motion to Supplement Exhibits.  At the conclusion of the hearing, the Court directed the

parties to file supplemental briefs by October 14, 2016 as to the issues identified above.

Following the hearing, the parties filed supplemental memoranda.  The Plaintiffs,

however, coupled their Memorandum with their own request for summary judgment

under § 523(a)(4).  Accordingly, from a procedural perspective, the Court shall consider

the parties to have filed cross-motions for summary judgment.

In filing his Motion for Summary Judgment, the Defendant failed to comply with

United States District Court Rule 56.1, made applicable to this proceeding by MLBR 7056-

1, by failing to file a "concise statement of material facts."[1]  Nevertheless, based upon the

---

[1] That rule provides the following:

> Motions for summary judgment shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation. Failure to include such a statement constitutes grounds for denial of the motion. Opposition to motions for summary judgment must be filed, unless the court orders otherwise, within 21 days after the motion is served. A party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation. Copies of all referenced documentation shall be filed as exhibits to the motion or opposition. Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties. Unless the court orders otherwise, the moving party may file a reply within 14 days after the response is served.

Complaint, the exhibits attached to the Complaint and the Answer, as well as supplemental exhibits submitted by the parties and affidavits, the Court is able to find the following undisputed material facts.

## II. BACKGROUND

A. <u>The Debtor's Bankruptcy Case</u>

The Debtor filed a Chapter 7 petition on December 16, 2014.[2]   At the time he was incarcerated and, thus, on his petition, listed his address as South Bay House of Correction, 27 Bradston Street Boston, Massachusetts."   On December 19, 2014, he filed Schedules and a Chapter 7 Statement of Current Monthly Income and Means-Test Calculation.   The Debtor listed no assets on Schedule A-Real Property and Schedule B-Personal Property and listed no debts on Schedules D-Creditors Holding Secured Claims and Schedule E-Creditors Holding Unsecured Priority Claims.   On Schedule F-Creditors Hold Unsecured Nonpriority Claims, the Debtor listed two holders of claims relating to revolving credit card accounts. On December 23, 2014, the Debtor amended Schedule F to list the Plaintiffs as well as Ronald Nasif, Marion Ward, Robert Ward, and Elissa M. Ferris.    On Schedule H-Codebtors, he listed "Steven Palladino Cedar Junction Correctional Facility South Walpole, MA 02071."   Steven Palladino is the Debtor's father.

---

United States District Court Rule 56.1

[2] The Court may take judicial notice of its own docket. *See* <u>LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)</u>, 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

On Schedule I: Your Income, the Debtor indicated that he was unemployed and had no income.  Similarly, he disclosed no expenses.  On December 24, 2014, the Debtor filed his Statement of Financial Affairs, disclosing income from "Viking" in the sum of $64,800 in 2012, and income from "Catz & Viking" in the sum of $38,037.47 in 2013.

On March 20, 2015, the Chapter 7 Trustee filed a Report of No Distribution.  Ten days later on March 30, the Court entered an order granting the Debtor a discharge of dischargeable debts.  The Plaintiffs, as well as Ronald Nasif, Marion Ward, Robert Ward, and Elissa M. Ferris, all of whom are represented by Attorney Stephen J. Delamere, timely filed complaints under 11 U.S.C. § 523(a)(2)(A&B) [sic] and (a)(4). [3]

On April 17, 2015, the Debtor filed a Notice of Address Change disclosing that he now resides in Stoughton, Massachusetts.

B. The Plaintiffs' Complaint

As noted below, the Plaintiffs' Complaint, while setting forth factual allegations, is deficient with respect to the description of the claims for relief.  Nevertheless, the Plaintiffs in cross moving for summary judgment clearly rely upon upon 11 U.S.C. § 523(a)(4) and its exception to discharge for larceny.

---

[3] The Plaintiffs' Complaint is substantially similar to complaints filed against the Debtor by Ronald Nasif (Adv. P. No. 15-1056), Marion Ward (Adv. P. No. 15-1057), Robert Ward (Adv. P. No. 15-1058), and Elissa M. Ferris (Adv. P. No. 15-1059).  Except for the amounts that the plaintiffs in those adversary proceedings seek to except from the Debtor's discharge, the averments in the complaints are substantially similar to those set forth in the instant adversary proceeding, and the pleadings and other documents filed in those adversary proceedings are the same as those filed in the instant case.

The Plaintiffs, who are husband and wife, filed their Complaint, referencing "Findings of Fact on Assessment of Damages, and Order for Entry of Final Judgment" entered by the Suffolk Superior Court, Department of the Massachusetts Trial Court, in a case captioned, <u>Ronald Nasif, Kenneth P. and Teresa Nasif, Elissa Ferris, and Marion and Robert Ward v. Viking Financial Group, Inc., Steven P. Palladino, Gregory Palladino, and Lori Palladino</u>, C.A. No. 2013-1382-C (the Suffolk Superior Court action) and the Criminal Docket in the case of <u>Commonwealth v. Palladino, Gregory</u>, Case No. SURC2013-10892. The Plaintiffs alleged that the the Debtor is the son of Steven Palladino and the step-son of Lori Palladino (collectively, the "Palladinos") and that the Palladinos operated Viking Financial Group, Inc. ("Viking"), "an alleged asset based corporation that made short term, high interest loans to developers and builders who could not secure traditional financing." The Plaintiffs further alleged that the Debtor "worked closely with his father" at Viking for approximately four years from 2009 to 2013. According to the Plaintiffs, Viking issued promissory notes to investors bearing high interest rates of "10% or more per year, depending on the terms of the Note," and represented to investors that "their investments would be used to make secured loans to borrowers at a higher interest rate than Viking would pay to its investors." In addition, the Plaintiffs averred that Steven Palladino represented that the loans were secured by first mortgages on properties that had significant equity.

The Plaintiffs further alleged that Viking made very few loans and "instead used the investors' money to fund a lavish lifestyle for the Palladino family, including trips to casinos, luxury automobiles, vacations, jewelry, and to pay interest to investors so as to

5

keep them in the dark on the true nature of their business, a Ponzi Scheme." The Plaintiffs

averred that the Debtor, while employed by Viking, performed "a lot of the banking, such

as depositing checks, cashing checks, sending wire transfers, and delivering some interest

payment to Investors."

The Plaintiffs represented that, "on or about May 1, 2011," Viking executed a note

in their favor in the original principal amount of $60,000. Thereafter, they increased their

investment in Viking several times. They alleged that, on January 1, 2013, Viking

executed a final note in their favor in the original principal amount of $470,000.

The Plaintiffs also alleged that the Debtor was indicted on charges stemming from

the Ponzi scheme and "plead [sic] guilty to criminal offenses, including usury,

conspiracy, larceny over $250, larceny over $250 from person over 60, and tampering with

records." The criminal docket reflects that the Debtor entered his guilty plea on January

21, 2014. As noted above, the Plaintiffs attached to their Complaint the Findings of Fact

on Assessment of Damages, and Order for Entry of Final Judgment. The Suffolk Superior

Court issued its Order on October 22, 2013, after all the defendants in that action were

defaulted pursuant to Mass. R. Civ. P. 55(a) between June 20, 2013 and September 10,

2013, but before the Debtor pled guilty to two counts of larceny. In the Superior Court

civil action, the state court entered a judgment against the Defendant and his fellow

defendants (i.e., the Palladinos and Viking), jointly and severally, in the following

amounts: $470,000 in favor of the Plaintiffs, $1,960,000 in favor of Ronald Nasif, $800,000

6

in favor of Robert Ward and Marion Ward;[4] and $1,485,000 in favor of Elissa M. Ferris.

Less than three weeks later, as discussed below, the Plaintiffs, together with Ronald Nasif,

Marion Ward, Robert E. Ward, Marion Ward's husband, and Robert J. Ward commenced

an action against Ernest C. Nasif, Jr.., Jenay Nasif, Joseph G. McNally, Melanie A.

McNally, Renay M. Beers, Frank L. Beers, Victoria Wesalowski and Mark Wesalowski in

the Norfolk Superior Court, Department of the Massachusetts Trial Court, Case No. 13-

1608 (the "Norfolk Superior Court action").

Based upon the foregoing, the Plaintiffs formulated two counts: Count I under 11

U.S.C. § 523(a)(2)(A&B) [sic] and (a)(4), and Count II under 11 U.S.C. § 523(a)(4). Notably,

the averments pertinent to each count are identical and set forth the following:

> The Debtor committed fraud and larceny by using the monies received
> from the Nasifs to support a lavish lifestyle, including but not limited to
> jewelry, clothing, luxury automobiles and vacations.

> The Debtor, along with his co-conspirators in Viking, fraudulently
> represented that the Nasifs' money was being used to fund loans to secured
> investors in connection with real estate transaction, and provided
> Promissory Notes allegedly protecting Nasifs' interest when Debtor knew
> or should have known that such investments did not exist.

At the hearing on the Defendant's Motion for Summary Judgment, the Plaintiffs, through

their counsel, clarified that they intended Count I to set forth a cause of action under 11

U.S.C. §. 523(a)(2)(A) and Count II to set forth a cause of action under 11 U.S.C. § 523(a)(4).

This Memorandum addresses only Count II.

---

[4] Marion Ward is Robert J. Ward's mother. In her Complaint, Marion Ward alleged that
her investment was combined with that of her son, Robert, which was $300,000 in
December of 2012. She made a $500,000 investment and Viking executed a new note in
their favor the sum of $800,000.

C. Debtor's Answer and Affirmative Defenses

The Defendant answered the Complaint, denying its substantive allegations.   In

addition, he asserted four affirmative defenses as follows:

First Affirmative Defense
Suffolk County Criminal Complaint

It was determined by the Suffolk County District Attorney's Office that the
Debtor/Defendant played a minor role and was not instrumental in
soliciting any funds from anyone. Debtor/Defendant had a full time job
outside of Viking Financial and performed duties, when asked by his father,
i.e. deliver envelopes to various entities and individuals, including but not
limited to making trips to the bank and Ernest Nasif, Jr.  Debtor/Defendant
did not have any 'decision making' authority within his capacity as a part-
time employee of Viking Financial Group, Inc. as evidenced by paragraphs
14 in Robert Ward's affidavit dated January 12, 2014.

Second Affirmative Defense
Solicitation of Funds

a) Plaintiffs misrepresents [sic] that the Debtor/Defendant solicited funds
from them causing them to invest money in Viking Financial. Plaintiffs
declare that it was their brother and brother-in-law, Ernest Nasif, Jr., who
solicited money to invest in the Viking Financial Group, Inc. (See attached
exhibits: Norfolk Superior Court Complaint Docket Number 13-01608 page
6 paragraphs 20, 21, page 7, paragraphs 22, 23, 24, page 8 paragraphs 25,
and 26; Plaintiff's Supporting Affidavit paragraphs page 1, paragraphs 1
through 10). Plaintiffs state who and when the funds were solicited and in
great detail. In Plaintiffs' Norfolk Superior Court Complaint, they are quite
clear that it was Ernest Nasif who encouraged him [sic] to invest, not the
Debtor/Defendant Gregory Palladino.
b) As the Plaintiffs, by their own admission, were not aggrieved by the
Debtor/Defendant, they lack standing to object to Debtor/Defendant's
discharge as they do not have the authority to pursue potential claims of
others. Further, Plaintiffs failed to ask permission from Mark DeGiacomo,
Trustee in this matter, for permission to pursue the Debtor/Defendant for
additional claims over and above what has been acknowledged by the
Trustee.
c) Plaintiffs are angry with their brother [Ernest Nasif] and brother-in-law's
betrayal as it relates to their investment with Ernest and the Viking
Financial Group, Inc. Plaintiffs' anger is plainly demonstrated by this

8

action. Plaintiffs link Steven Palladino, and his entire family, with their brother and brother-in-law's betrayal and have transferred their anger to Gregory Palladino. Plaintiff seeks to punish all associated with Viking Financial, especially the Palladino family. Plaintiffs are in denial that any harm suffered by them was caused for two reasons, 1. Plaintiffs' greed and 2, their fear of their brother and brother-in-law manifested by their collective inability to say "No".

Third Affirmative Defense
Unclean Hands Doctrine

 a) Plaintiff is not entitled to the relief sought due to the "Unclean Hands" Doctrine. Upon information and belief, Plaintiffs may have committed fraud and income tax evasion where there may be evidence that they did not report the monthly 'interest' cash payments received from brother Ernest Nasif in the year that the funds were received. It is also believed that they filed amended tax returns after the District Attorney's Office began investigating the Viking Financial Group, Inc. to cover up the tax evasion and avoid prosecution by the Internal Revenue Service.

As a former Assistant U.S. Attorney and retired Justice, Kenneth Nasif ought to be held to the highest standard and be beyond reproach however it appears that he did not seek the high road when he collected 'cash' on monthly basis in an envelope from his brother for nearly three years. It was apparent from his actions that he was not concerned why he was receiving large sums of 'cash' and where the money was coming from, he and his wife enjoyed the benefits of receiving the cash with no questions asked.

Fourth Affirmative Defense
Malicious Prosecution

This action filed by the Plaintiffs is malicious in nature. Plaintiffs seeks [sic] to 'punish' the Debtor/Defendant because his name is Gregory Palladino and he is the son of Steven Palladino.  This adversary proceeding was filed knowing 1. that the Debtor/Defendant did not solicit funds from the Plaintiffs and therefore was not the proximate cause of Plaintiffs' harm, 2. The Plaintiffs and their counsel filed this adversary proceeding with malicious intent. The adversary proceeding is the proximate cause for unnecessary financial burden placed on the Debtor/Defendant who is now struggling to rebuild his life.

The Debtor attached to his Answer the complaint filed by the Plaintiffs, as well as Ronald Nasif, Robert J. Ward, Robert E. Ward, and Marion Ward in the Norfolk Superior Court [5] for "breach of contract, breach of implied covenant of fair dealing, fraud, fraud in the inducement, unjust enrichment, money had and received, Chapter 93A, and reach and apply. The record reflects that Ernest Nasif is the brother of Kenneth and Ronald Nasif. Jenay Nasif is Ernest Nasif's wife, and Melanie A. McNally, Renay M. Beers and Victoria Wesalowski are Ernest Nasif's daughters. In their complaint, the plaintiffs referenced Steven Palladino's arrest by the Boston Police Department and his indictment in March of 2013, as well as an investigation by the Securities and Exchange Commission, whose "forensic accountant determined that Defendant Nasif [Ernest] assisted [Steven] Palladino with Viking's business" and that "[t]he Plaintiffs have invested a total of of $3,230,000 through Defendant Nasif, and Defendant Nasif was motivated to seek investors as he received a percentage of every dollar that was invested by his investors, including the Plaintiffs." In addition, the Defendant attached to his Answer the Affidavits of Kenneth P. Nasif, Ronald Nasif, and Robert J. Ward filed in that Norfolk Superior Court action. In their affidavits, they represent that Ernest Nasif solicited their investments in Viking, referred to Viking as his company or a company he owned with Steven Palladino, referred to Steven Palladino as his "partner" or as his "employee," and promised his relatives their investments were safe.

---

[5] As discussed below, the Defendant moved to supplement the exhibits to his Motion for Summary Judgment with a copy of his Motion to Set Aside Judgment, together with a Memorandum in Support of that motion filed in the Suffolk Superior Court action pursuant to Mass. R. Civ. P. 60(b)(3).

Steven Palladino had a criminal history prior to his indictment in 2013. His wife,

Lori Palladino also was indicted in 2013. Steven Palladino filed a Chapter 7 bankruptcy

petition together with his spouse, Lori, in April of 2014 and both were denied a discharge

in May of 2015.

## III. THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION

A. The Defendant's Motion for Summary Judgment

On May 29, 2016, the Defendant filed his Motion for Summary Judgment, together

with a Memorandum, the Affidavit of his attorney, Eugene C. Johnson, Esq., the Affidavit

of Kenneth P. Nasif filed in the Norfolk Superior Court action (No. 13-1608), as well as

the Plaintiffs' tax return for 2011 (Form 1040), their amended tax return for 2011, and their

2012 tax return. According to the Plaintiffs they were required to amend their 2011 tax

return because Viking did not provide them with a Form 1099 INT. The Defendant, as

noted above, supplemented those exhibits with his Motion to Set Aside Judgment filed

in the Suffolk Superior court action, together with a memorandum in support of that

motion and the Affidavit of Attorney Johnson.

In support of his Motion for Summary Judgment, the Debtor argues, seemingly

with reference to 11 U.S.C. § 727(a)(4)(A), rather than § 523(a)(2)(A), that "there are no

allegations that the Debtor/Defendant knowingly and fraudulently made any false

statements relative to the documents filed in his petition [sic] or in the state court" or that

he "made false statements under oath relative to his petition and related documents."

The Debtor also argues that the Plaintiffs' harm, if any, was a consequence of their "own

11

greed and pursuing 'easy money' promised to them by his brother and her brother-in-law, Ernest Nasif, Jr. (hereinafter 'Buzzy')."  According to the Debtor, Buzzy promised the Nasifs "large 'tax free' monthly cash interest payments in return for their investments," adding that Ronald Nasif encouraged the Plaintiffs to invest with Buzzy. The Debtor relies upon the Affidavit of Kenneth P. Nasif, in which the former Assistant United States Attorney and retired state court judge represented that his brother, Ernest, approached him and encouraged him to invest in "what he called 'my investment company.'"  According to Kenneth Nasif in his Affidavit, his brother explained that he and his partner, Steven Palladino, were in the business of making secured, bridge loans to third party borrowers at high interest rates and, accordingly, his brother would be able to pay him interest of 12% on the money he invested.  Based upon his brother's success with the business, evidenced by his $1 million per year income and sizeable gifts to his daughters, the Plaintiffs made the decision to invest, refinancing his home and using life savings.  Kenneth Nasif originally gave his brother checks to invest and received notes payable from him.  Later the notes were cosigned by Steven Palladino, and the Plaintiffs received interest payments in cash.  Kenneth Nasif further represented in his Affidavit that the Ponzi scheme began to unravel in early December of 2012 when the Boston Police seized approximately $614,000 from Viking's bank accounts, although he was unaware of that event at the time.  He added that, in late December of 2012, he delivered a check in the sum of $170,000 to his brother, a sum which he obtained from a home equity loan on his residence.

The Debtor, referencing the Plaintiffs' tax return for 2011, averred the Plaintiffs failed to report interest income from Viking, although they were receiving approximately $2,000-$3,000 per month in cash from Buzzy from June of 2011 through June of 2012. Thereafter, they received interest checks from Viking.  The Debtor asserted that the Plaintiffs were aware of wrongdoing and have "unclean" hands, adding that Kenneth Nasif invoked his status as a retired judge to gain credibility in the Norfolk Superior action against his brother and his immediate family, while noting that he [Gregory] was not named as a defendant in the complaint filed in the Norfolk Superior Court action. The Debtor concludes:  "To date, no one has come forward and asserted that the Defendant solicited any funds.  The Plaintiffs in this matter ought not to be allowed to prevent the Defendant . . . from receiving a discharge [sic]."  In addition, he asserted that the Plaintiffs' attempts "at blocking Palladino's discharge falls under the 'malicious use of process' category," adding "[o]ffspring of someone who commits a criminal act ought to to be punished for the acts of the father. . . . [and that] . . . this adversary proceeding ought to be dismissed as claims and assertions brought by the Plaintiff [sic] are frivolous and vindictive in nature."

B. Plaintiffs' Opposition to the Motion for Summary Judgment

The Plaintiffs filed an Opposition to the Defendant's Motion for Summary Judgment to which they attached six exhibits, including 1) an email and letter from the Defendant to Ronald Nasif regarding his investments in Viking, 2) a deposition transcript from an examination of the Debtor conducted on September 21, 2015 in Adv. P. No. 15-1056, captioned Ronald Nasif v. Gregory Palladino, in which he admitted to being a

13

signatory to Viking financial accounts, and to having a joint bank account with his father, 3) Articles of Organization for Viking in which the Defendant is listed as a Vice President and Director, 4) the criminal case docket in <u>Commonwealth v. Palladino, Gregory</u>, SUCR2013-10892, 5) Form W-2 Wage and Tax Statements showing the Defendant's earnings from Viking, and 6) the Findings of Fact on Assessment of Damages, and Order for Entry of Final Judgment entered in the Suffolk Superior Court action.  The Plaintiffs also supplemented their exhibits with nine checks from the bank account of Ernest and Jenay Nasif, totaling $28,000 made payable to the Defendant.

In their Opposition to the Motion for Summary Judgment, the Plaintiffs, relying upon the exhibits referenced above, in particular the email, letter, and deposition testimony, state that the Debtor was a Vice President of Viking and was listed as a Director and Vice President at its inception in May of 2007 and in subsequent annual filings.  As noted above, the Debtor in his deposition admitted being a signatory on Viking financial accounts and having a joint bank account with his father, although his frequent answer to questions posed by Plaintiffs' counsel was "I don't recall or remember."  Indeed when asked about his administrative work he stated:  "I have answered these questions over and over again on public record in Superior Court and in a 314 hearing [sic] in front of the US Trustee and in front of yourself also.  It is also on the record under oath. You can find all of these answers there."  In short, the Debtor was uncooperative, evasive, and combative during his deposition.  Indeed, he stated that he did not remember exactly what his role was at Viking.

The Plaintiffs in their Opposition, also emphasized that the Defendant pled guilty in the Suffolk Superior Court on January 21, 2014 to the following charges:  Larceny over $250 pursuant to Mass. Gen. Laws ch. 266, § 30(1); Larceny over $250 pursuant to Mass. Gen. Laws ch. 266, § 30(5); Conspiracy pursuant to Mass. Gen. Laws ch. 247, § 7, Tampering with a Record, Document or Other Object, namely a computer kept at Viking containing its records pursuant to Mass. Gen. Laws ch. 268, § 13(E)(b), and Usury pursuant to Mass. Gen. Laws ch. 271 § 49(a) and (b) (three charges). Finally, the Plaintiffs state that the Debtor was sentenced to two years in prison and five years of probation with conditions.

In their Opposition, the Plaintiffs contend that the Debtor is not entitled to summary judgment as there are genuine issue of material fact "if the Plaintiff's [sic] claim is not subject to being discharged."  They add that the Debtor's claims of unclean hands and other affirmative defenses do not bar the relief they seek through their Complaint.

**IV. POST-HEARING DOCUMENTS**

At the hearing, Plaintiffs' counsel argued that the Debtor should be collaterally estopped from challenging the entry of judgment under § 523(a)(4) owing to his guilty pleas to the larceny charges.  As noted above, the Court directed the parties to submit briefs and documents, including the indictments issued by the Commonwealth following a grand jury investigation and hearing transcripts from proceedings in the criminal case involving the Debtor pertinent to the Debtor's guilty pleas to the larceny and other charges.

In accordance with the Court's order, the Plaintiffs submitted three exhibits, including the indictments against the Debtor, and hearing transcripts from a status conference held on January 14, 2014 before Superior Court Judge Janet Sanders, and a change of plea hearing held on January 21, 2014 before Judge Sanders. Three indictments are relevant here: one under Mass. Gen. Laws ch. 266, § 30(1), another under Mass. Gen. Laws ch. 266, § 30(5), and the third under Mass. Gen. Laws ch. 247, §7 which pertains to the crime of conspiracy. With respect to the charge under § 30(1), the indictment set forth the following: "on various dates on and after May 16, 2007, [Gregory Palladino] did steal money, of the value of over two hundred and fifty dollars, of the property of . . . Elissa Ferris, . . . Ronald Nasif, . . . [and] Robert Ward . . . ." With respect to the charge under §30(5), the indictment set forth the following: "on various date [sic] on and after May 16, 2007, [Gregory Palladino] did steal money, of the value of over two hundred and fifty dollars, of the property of . . . Kenneth Nasif, Peter Shamatta and/or Marion Ward, persons sixty years of age or older. The indictment relating to the conspiracy charge provided: "on various dates on and after May 1, 2007, [Gregory Palladino] did conspire together with Steven Palladino and Lori Palladino to commit the offense of larceny over two hundred and fifty dollars by stealing money, of the value of over two hundred and fifty dollars, the property of others." Notably, Teresa Nasif is not named as a victim in either of the indictments for larceny.

At a January 14, 2014 status conference before the Judge Janet Sanders, an Assistant District Attorney for Suffolk County, Benjamin Goldberger, Esq., summarized the activities of Steven Palladino, whom he stated was "indicted and convicted on

numerous occasions in the Superior Court dating back to the 1990s,"as well as the

activities of Gregory Palladino and Lori Palladino.   With respect to the Defendant and

his step-mother, he stated:

> The Commonwealth's position is that they [Gregory and Laurie] were
> knowing participants in it, they assisted him [Steven Palladino] in it.  Laurie
> occupied more of a back office function in terms of keeping the books, in
> terms of signing checks to pay investors their monthly interest for those
> investors who were paid by checks.
>
> And Gregory assisted his father in the more kind of front end of the
> business in terms of dealing with investors, delivering funds to investors,
> getting funds from investors.   And for those few borrowers when the
> company actually did have some loans out Gregory also participated in
> those as well.[6]

The Debtor's defense counsel stated the Debtor's position with respect to

sentencing at the status conference.  He represented:  "In Gregory Palladino [sic] he had

a more, more of a position [in the Ponzi scheme], but as an employee, rather than as the

principal of this organization."

At the status conference, Judge Sanders stated that she considered the sentencing

recommendations of Judge Ball, who previously had conducted hearings in the criminal

case.  She observed that she "was very moved" by the statements she heard and those

she read, noting, among other things, that Mr. Palladino [Steven Palladino] . . . with the

help of his family, preyed on war veterans, widows, divorcees, disabled, [and] retired

[persons]."  She also stated:

> [I]t looks to me from what's been said and what I've read here, that Gregory
> was more active [than Laurie].  *He actually was out there with his father
> soliciting money.*  He also seemed to share in the wealth in the sense that he

---

[6] Lori Palladino's first name is misspelled "Laurie" throughout the transcript.

was going on some of these trips and directly benefiting, maybe even more
than Laurie, even though I understand she also had a nice car, for example,
and that kind of thing.

*** 

So, with respect to Gregory, I would not exceed what Judge Ball has
recommended for him.  That is, two years in the House of Corrections with
five years probation.

(emphasis supplied).  At the conclusion of the status conference, Judge Sanders scheduled

a further hearing in seven days.

At the January 21, 2014 hearing, the Debtor changed his plea and pled guilty to the

seven charges for which he was indicted, including the two charges of larceny and the

charge of conspiracy.  Judge Sanders requested Attorney Goldberger to recite the facts

the Commonwealth was prepared to prove if there were to be a trial.  With respect to the

Debtor, Attorney Goldberger stated in relevant the following: 1) that in May of 2007, he

and Lori Palladino formed Viking; 2) that the Debtor served as a Director; 3) that the

Debtor was involved in meeting with the owner of a company called North Suburban

Transportation, Inc., which had borrowed money from Viking at usurious rates, for the

purpose of collecting loan payments; 4) that investor funds were not deposited into

Viking accounts but instead were deposited into an account in the name of Steven

Palladino and Gregory Palladino; 5) that Steven Palladino and the Debtor used the

monies from that account to pay interest to new investors, to fund the family's lavish

lifestyle and to cover educational expenses of the Palladinos' children; 6) that the

representations made to investors, including those named in the two larceny indictments

against the Debtor, were false in that little of the money obtained was used to make loans

18

and that the loans which were made were not secured by mortgages; 7) that the money obtained from new investors was used to pay monthly interest to older investors; and 8) that the total sums obtained as part of the Ponzi scheme exceeded $10 million.  With respect to the account in the name of the Debtor and his father, Attorney Goldberger stated:

> Other investor funds - - never went into a Viking account and instead went into an account in the name of Steven Palladino and Gregory Palladino. These were deposited into the account by both Steven and Gregory.  And that account, or those accounts, because the structure of having the operating account and the separate Steven and Gregory account existed at both their initial bank, Citizens Bank, and their second bank, Eastern Bank. Investor funds that were believed by the investors and represented to the investors that they were going to be part of their investment in Viking Financial were instead put directly into this Steven and Gregory account.

> The Steven and Gregory account was used for a variety of things.  One of them was to pay interest to new investors, but others were to engage in personal expenditures, to transfer money to casinos, to withdraw cash for use at family vacations, to purchase vehicles, to cover educational expenses for the Palladinos' children.

At the conclusion of the hearing and following extensive examination of the Debtor as to his knowing waiver of his right to a jury trial, and his understanding of, and implications of, his guilty plea, the Superior Court sentenced him to two years in the House of Correction and five years of probation with conditions.

## V. SUMMARY JUDGMENT STANDARD

According to the United States Bankruptcy Appellate Panel of the First Circuit in Raso v. Fahey (In re Fahey), 482 B.R. 678 (B.A.P. 1st Cir. 2012),

> "In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056." Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 762 (1st Cir. 1994); see also Soto–Rios v. Banco Popular de Puerto Rico, 662

F.3d 112, 115 (1st Cir. 2011). "By its express terms, the rule incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure." In re Varrasso, 37 F.3d at 762 (citations omitted); *see also* Soto–Rios v. Banco Popular de Puerto Rico, 662 F.3d at 115; Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56.6 "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." In re Varrasso, 37 F.3d at 763 (citing Fed. R. Civ. P. 56(c)). "As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver an absence of evidence to support the nonmoving party's case." Id. at 763, n. 1 (citation and internal quotations omitted). "The burden of production then shifts to the nonmovant, who, to avoid summary judgment, must establish the existence of at least one question of fact that is both genuine and material." Id. (citations and internal quotations omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In re Fahey, 482 B.R. at 686–87.

## VI. DISCUSSION

### A. Law Applicable to Collateral Estoppel

It is well recognized that collateral estoppel principles apply in proceedings to determine the dischargeability of a debt under 11 U.S.C. § 523(a). *See* Phalon v. Varrasso (In re Varrasso), 194 B.R. 537, 538 (Bankr. D. Mass. 1996)(citing Grogan v. Garner, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991)). *See also* Backlund v. Stanley–Snow (In re Stanley–Snow), 405 B.R. 11 (BAP 1st Cir. 2009). Under the full faith and credit statute, 28 U.S.C. § 1738, the preclusive effect of a state court judgment in a subsequent nondischargeability proceeding under bankruptcy law is governed by the collateral estoppel law of the state from which the judgment is taken. Id. at 538-59 (citations omitted, footnote omitted.).

> Under Massachusetts law, collateral estoppel precludes relitigation of
> issues in prior actions between the parties or those in privity with those
> parties, provided the issues were actually litigated in the first action, and
> determined by a "final judgment on the merits." Smith Barney, Inc. v.
> Strangie (In re Strangie), 192 F.3d 192, 194 (1st Cir. 1999). To apply the
> doctrine, a court must determine that: (1) there was a valid and final
> judgment on the merits in the prior adjudication; (2) the party against
> whom estoppel is asserted was a party (or in privity with a party) to the
> prior litigation; (3) the issue in the prior adjudication is identical to the issue
> in the current litigation; and (4) the issue in the prior litigation was essential
> to the earlier judgment. Alba v. Raytheon Co., 441 Mass. 836, 809 N.E.2d
> 516, 521 (2004) (citations omitted). The Supreme Judicial Court of
> Massachusetts has noted that "the 'guiding principle' in determining
> whether to allow a party to use collateral estoppel is whether the party
> against whom it is asserted had a 'full and fair opportunity to litigate the
> issue in the first action or [whether] other circumstances justify affording
> him an opportunity to relitigate the issue.'" Treglia v. MacDonald, 430
> Mass. 237, 717 N.E.2d 249, 253 (1999) (quoting Martin v. Ring, 401 Mass. 59,
> 514 N.E.2d 663 (1987)).

Stanley–Snow, 405 B.R. at 18.   Thus, for purposes of the Plaintiffs' cross-motion for

summary judgment, Massachusetts law permits a litigant to invoke collateral estoppel

only with respect to issues that were actually litigated in the prior action. Aetna Cas. &

Sur. Co. v. Niziolek, 395 Mass. 737, 748, 481 N.E.2d 1356, 1363 (1985).

The Supreme Judicial Court has determined that "the doctrine of collateral

estoppel does not apply to preclude the former criminal defendant from litigating in

subsequent civil litigation issues involved in the criminal proceeding in which he pleaded

guilty," although it indicated that the plea is admissible in the civil action as an

admission. Id. at 748, 750, 481 N.E.2d 1363, 1364. The court reasoned:

> In Morrissey v. Powell, 304 Mass. 268, 269, 23 N.E.2d 411 (1939), this court
> stated: "A plea of 'guilty' is an admission of the material facts alleged in the
> complaint or indictment . . . and in so far as it amounts to an admission of
> facts material in the trial of a civil case in which the person so pleading is a
> party, it is admissible as evidence against him. Dzura v. Phillips, 275 Mass.

21

283, 289, 290 [175 N.E. 629 (1931)]. *See* <u>Blackman v. Coffin</u>, 300 Mass. 432, 437 [15 N.E.2d 469 (1938)]. But such a plea, even when followed by a conviction, is not necessarily conclusive as to the facts admitted, and the record of a conviction based upon a plea of guilty is received 'not as a judicial act, having the force and effect of a judgment, but as a solemn confession of the very matter charged in the civil action.' <u>Mead v. Boston</u>, 3 Cush. 404, 407 [1849]. The plea may be explained and reasons shown for entering it. <u>Buxton v. Somerset Potters' Works</u>, 121 Mass. 446 [,448 (1877)]. <u>Minasian v. Aetna Life Ins. Co.</u>, 295 Mass. 1, 3 [3 N.E.2d 17 (1936)], and cases cited." Aetna urges us to reconsider that position and to give a conviction following a guilty plea preclusive, as compared with evidentiary, effect in subsequent civil litigation. We decide to adhere to the position set out in <u>Morrissey v. Powell</u>, *supra*. We note that courts in at least thirty-nine other States join us in taking the position that a plea of guilty is admissible in evidence as an admission in subsequent civil litigation, but is not conclusive.

<u>Niziolek</u>, 395 Mass. at 747, 481N.E.2d at 1362-63.[7]

_____

[7] The court elaborated:

When a conviction is entered after a plea of guilty, "no issue [is] 'actually litigated' . . . since [the defendant] decline[s] to contest his guilt in any way." <u>Haring v. Prosise</u>, 462 U.S. 306, 316, 103 S.Ct. 2368, 2374, 76 L.Ed.2d 595 (1983). Therefore, the doctrine of collateral estoppel does not apply to preclude the former criminal defendant from litigating in subsequent civil litigation issues involved in the criminal proceeding in which he pleaded guilty. *See* Restatement (Second) of Judgments § 85 comment b (1982); 1B Moore's Federal Practice par. 0.418[1] (1984); C.A. Wright, A.R. Miller & E.H. Cooper, Federal Practice and Procedure § 4474 (1981)."

Although, when a plea of guilty is accepted the issues are not technically litigated," Aetna concedes in its brief, "the trial court is nevertheless constrained to conduct a hearing to determine the voluntariness of the plea as well as a factual basis therefor." *See* Mass. R. Crim. P. 12, 378 Mass. 866 (1979). Therefore, states Aetna, quoting <u>Ideal Mut. Ins. Co. v. Winker</u>, 319 N.W.2d 289, 295 (Iowa 1982), "[o]nce a guilty plea is accepted, a judicial determination has thus been made with respect to the essential elements of the crime." Aetna argues that that judicial determination should provide a basis for its invocation of collateral estoppel to preclude Bednarz from litigating whether he committed the essential elements of the crimes to which he pleaded guilty.

B. <u>Analysis</u>

1. Defendant's Motion for Summary Judgment

The Court denies the Defendant's Motion for Summary Judgment.  The Defendant in his Motion initially failed to recognize that the Plaintiffs, through their Complaint, seek an exception to his discharge for their investments in the Ponzi scheme in which the Debtor was involved pursuant to 11 U.S.C. § 523(a)(4), rather than a denial of his discharge under 11 U.S.C. § 727(a).  Moreover, the Defendant's Motion for Summary

---

We disagree. It is true, as the trial judge points out in his report, that, before accepting a guilty plea, judges in this Commonwealth must take great pains to ensure that the plea has a basis in fact. Mass. R. Crim. P. 12(c)(5)(A). *See* <u>Commonwealth v. Fernandes</u>, 390 Mass. 714, 719, 459 N.E.2d 787 (1984); <u>Commonwealth v. Foster</u>, 368 Mass. 100, 107, 330 N.E.2d 155 (1975). Nevertheless, "the taking of a guilty plea is not the same as an adjudication on the merits after full trial." <u>Ohio v. Johnson</u>, __U.S. __, 104 S.Ct. 2536, 2541–2542 n.9, 81 L.Ed.2d 425 (1984). When a defendant pleads guilty, waiving his right to a trial by jury, scarce judicial and prosecutorial resources are conserved. While the judge taking the plea must satisfy himself that there is a factual basis for a charge, he need not find that the defendant actually committed the crime to which he is pleading guilty. *Cf.* <u>North Carolina v. Alford</u>, 400 U.S. 25, 37–38 & n. 10, 91 S.Ct. 160, 167 & n.10, 27 L.Ed.2d 162 (1970). Furthermore, because there have been no findings, a conviction after a plea of guilty does not present the possibility of inconsistent factual determinations. For collateral estoppel purposes, those factors justify treating a conviction after a guilty plea differently from a conviction after a trial.

We emphasize that a defendant's guilty plea is not without consequence in subsequent civil litigation. *The defendant's guilty plea and any other admissions made during the plea-taking colloquy with the judge are admissible as evidence in the civil litigation.*

<u>Aetna Cas. & Sur. Co. v. Niziolek</u>, 395 Mass. at 748–50, 481 N.E.2d at 1363–64 (emphasis supplied).

Judgment is entirely predicated upon the validity of his affirmative defenses, in particular unclean hands and malicious prosecution.

In his post-trial brief, the Debtor challenges the Plaintiffs' standing, arguing that "[t]he statute allows **bona fide creditors,** i.e., creditors who obtained judgments in 'good faith', without fraud or deceit who have legitimate claims to object to discharge." (emphasis in original).   Relying upon the Suffolk Superior Court action in which the Plaintiffs obtained a judgment against him, and the Norfolk Superior Court action against Ernest Nasif and others, the Debtor argues that the "Plaintiffs knowingly and deliberately concealed from the Suffolk Superior Court Judge who solicited and committed larceny and defalcation against them.   It was their brother and brother-in-law Buzzy [Ernest Nasif]."   In other words, the Debtor assumes an inconsistency in the positions advanced by the Plaintiffs because, despite having obtained a judgment in the Superior Court action, they contend that Buzzy caused their harm in the Norfolk Superior action, thereby somehow estopping them from seeking an exception to his discharge based upon his guilty plea to two counts of larceny under Mass. Gen. Laws ch. 266, § 30(1) and (5). Neither the Debtor nor the Palladinos defended the Suffolk Superior Court action and, at this time, the Plaintiffs hold a judgment bearing statutory interest from March 1, 2013 through the date of the entry of judgment against the Debtor, i.e., October 22, 2013. Although the Debtor moved in August of 2016 to set aside that judgment pursuant to Mass R. Civ. P. 60(b)(3),[8] there is no evidence at this time that the judgment has been

---

[8] Rule 60(b)(3) provides:

vacated. Moreover, to the extent that it was revealed at the sentencing hearing that Steven

Palladino had a silent partner, presumably Ernest Nasif, the Plaintiffs' attempt to collect

their judgment from him and others does not create a genuine issue of material fact as to

the effect of the Debtor's guilty plea and the evidence pertinent to an exception to

discharge under § 523(a)(4) for larceny, particularly where it is surprising, based upon

the Affidavits of Kenneth and Ronald Nasif and Robert J. Ward, that Ernest Nasif escaped

criminal charges as part of the Ponzi scheme orchestrated by Steven Palladino with the

help of his family.

With respect to the indictments and the guilty pleas to two counts of larceny, the

Debtor argues as follows:

> The crime of larceny requires the taking and asportation [sic] of personal
> property of another without consent and with the mens rea to permanently
> deprive (steal) the property of another. That being said, the
> Commonwealth never had any evidence and do not [sic] produce or offer
> any evidence [sic] that Gregory Palladino committed larceny. None of the

---

On motion and upon such terms as are just, the court may relieve a party
or his legal representative from a final judgment, order, or proceeding for
the following reasons: . . . (3) fraud (whether heretofore denominated
intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse
party. . . .

Mass. R. Civ. P. 60(b)(3). "A 'fraud on the court' occurs where 'it can be
demonstrated, clearly and convincingly, that a party has sentiently set in motion
some unconscionable scheme calculated to interfere with the judicial system's
ability impartially to adjudicate a matter by improperly influencing the trier or
unfairly hampering the presentation of the opposing party's claim or defense.'"
Wojcicki v. Caragher, 447 Mass. 200, 209-10, 849 N.E.2d 1258 (2006)(citations
omitted). "The behavior must be 'egregious conduct involving a corruption of the
judicial process itself. Examples are bribery of judges, employment of counsel to
'influence' the court, bribery of the jury, and the involvement of an attorney (an
officer of the court) in the perpetration of fraud.'" Id. at 210.

elements of larceny were met nor could they be met; the Commonwealth did not have any facts at their disposal that demonstrated that Gregory Palladino was guilty of larceny.[9]

The affirmative defenses raised by the Debtor do not present genuine issues

of material fact that would preclude the Plaintiffs' from prevailing on their cross-

motion for summary judgment through which they seek an exception to the

---

[9] The Debtor supported this assertion in an Affidavit attached to his Supplemental Brief in which he stated:

> My duties at Viking were essentially administrative, i.e. picking up and delivering documents to various sites, making bank deposits when instructed to do so by my father Steven Palladino, and or [sic] his partner, Ernest Nasif, Jr. Occasionally, Ronald Nasif would instruct me to write documents relative to the Notes for people who he had asked to invest in Viking, mostly his friends.

> Although Ernest Nasif's name was not on the corporation documents, he and my dad were the persons in charge of the operation. They controlled all the money they solicited the majority of the funds, they made the decisions of who would receive a dividend, how much the dividend would be, and when the dividends would be paid out. They normally distributed the money from his home in West Roxbury.

> ***

> While working at Viking, I sever solicited or asked anyone to 'invest' in Viking Financial. There are four names listed as borrowers in all the Notes, they are Ernest Nasif, Steven Palladino, Ronald Nasif, and Viking Financial Group, Inc. There are no Notes that contain my name as "borrower. [sic] I took no money from anyone, I did not structure any deals or negotiate any terms between the lenders and borrowers, and I was not involved in distributing the money to the investors, Ernest Nasif and my father distributed all the money.

Debtor's discharge under § 523(a)(4).[10]  In his Motion for Summary Judgment, the

Debtor relies upon the doctrine of unclean hands, as well as the tort of malicious

prosecution.  Primarily, he relies upon a generalized assertion that Kenneth Nasif,

as a former judge, used his influence improperly and that the Plaintiffs are

motivated by greed, ill will, and "anger and hatred towards Steven Palladino's

entire family."

With respect to the doctrine of unclean hands, the court in Clyde

Bergemann, Inc. v. Brion (In re Brion), No. 10–37631–tmb7, 2011 WL 2516164

(Bankr D. Or. June 22, 2011), set forth the applicable law:

> Courts have recognized "unclean hands" as a defense to § 523 actions. *See, e.g.*, OSB Manufacturing, Inc. v. Hathaway, II (In re Hathaway, II), 364 B.R. 220 (Bankr. E.D. Va. 2007); Hooper v. Everett (In re Everett), 364 B.R. 711 (Bankr. D. Az. 2007). However, "[i]t is fundamental to [the] operation of the doctrine that the alleged misconduct by the [party] relate directly to the transaction concerning which the complaint is made. [U]nclean hands does not constitute misconduct in the abstract, unrelated to the claim to which it is asserted as a defense." Seller Agency Council, Inc. v. Kennedy Center for Real Estate Educ., Inc. 621 F.3d 981, 986–87 (9th Cir.2010) (internal quotation omitted) (citations omitted).
>
> > "Case law requires that in order to invoke the affirmative defense of unclean hands, there must be a specific nexus between the alleged misconduct of the moving party and the transaction of which he is complaining. . . . [While t]he moving party's hands must be clean with respect to the specific transaction to which he seeks relief [, h]e is not required to come to court with generally clean hands."
>
> Hathaway, 364 B.R. at 243–44.

---

[10] The Court notes that the Debtor makes arguments with respect to embezzlement, defalcation while acting in a fiduciary capacity and misrepresentation, which are not germane to the issue before the Court which involves larceny only.

In re Brion, 2011 WL 2516164, at *7.  Similarly, in In Greene v. Mullarkey (In re Mullarkey), 410 B.R. 338 (Bankr. D. Mass. 2009), the court observed the following with respect to the affirmative defense of unclean hands,

> The unclean hands doctrine is a "self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper have been the behavior of the defendant." Precision Instrument Mfg. Co. et al. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). The saying " 'he who comes into equity must come with clean hands' of necessity gives wide range to a court's use of 'discretion to withhold punishment of behavior which it considers not to warrant so severe a sanction.'" K–Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 912 (1st Cir.1989) (citations omitted). The doctrine "only applies when the claimant's misconduct is directly related to the merits of the controversy between the parties, that is, when the tawdry acts 'in some measure affect the equitable relations between the parties in respect of something brought before the court'." [sic] Texaco Puerto Rico, Inc. et al. v. Dep't of Consumer Affairs et al., 60 F.3d 867, 880 (1st Cir. 1995) (quoting Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293 (1933)).

In re Mullarkey, 410 B.R. at 354.

As discussed below, the guilty pleas, together with the indictments, transcripts from the status conference, the change of plea hearing in the criminal action, and the judgment entered in the Suffolk Superior Court action establish that the Plaintiffs have claims against the Debtor arising out of his involvement with the Ponzi scheme operated by Viking.  The Plaintiffs' pursuit of claims against Ernest Nasif and others does not absolve the culpability of Steven Palladino, Lori Palladino or the Debtor.[11]  The Court

---

[11] The Defendant filed a Motion to Attach Document to Supplemental Brief, which the Court granted in the absence of objection.  The document appears to be a news article in which the author reports that summary judgment entered against Ernest Nasif in the Norfolk Superior Court action.

rejects the notion that the Plaintiffs' decision to commence an action against Ernest Nasif

and others operates to eliminate their claims against the Debtor.  The undisputed facts

are that Ernest Nasif, together with Steven Palladino and members of Steven Palladino's

family, were involved in a joint venture to extract funds from family, friends and other

susceptible individuals to finance a lavish lifestyle.  Especially where the Plaintiffs are

unlikely to be made whole from monies seized in the criminal proceedings or obtained

from restitution orders or from judgments entered by the Suffolk Superior Court in their

action against Viking and the Palladinos, the Court finds no merit in the Debtor's

contention that the Norfolk Superior action against Ernest Nasif somehow taints the

instant adversary proceeding.  To the extent the Defendant appears to assert an election

of remedies argument, the Court concludes that that doctrine in inapplicable here.  *See*

ConnectU LLC v. Zuckerberg, 522 F.3d 82, 90 (1st Cir. 2008) ("The purpose of the doctrine

is to prevent double recovery for the same wrong."); Dopp v. HTP Corp., 947 F.2d 506,

514 (1st Cir. 1991) ("The election of remedies doctrine applies only when the remedies

sought are legally or factually inconsistent.").

With respect to the Debtor's malicious prosecution affirmative defense,

The essence of the tort of malicious prosecution is "interference with the
right to be free from unjustifiable litigation." Foley v. Polaroid Corp., 381
Mass. 545, 552, 413 N.E.2d 711 (1980), citing W. Prosser, Torts § 119, at 834
(4th ed. 1971). The tort "is not confined to the wrongful initiation of criminal
proceedings; it may be maintained for the unjustifiable initiation of a civil
action." Hubbard v. Beatty & Hyde, Inc., 343 Mass. 258, 260–261, 178 N.E.2d
485 (1961). To prevail on a claim for malicious prosecution, a plaintiff must
establish that he was damaged because the defendant commenced the
original action without probable cause and with malice, and that the
original action terminated in his favor. Id. at 261, 178 N.E.2d 485. *See* Beecy
v. Pucciarelli, 387 Mass. 589, 593, 441 N.E.2d 1035 (1982).

Chervin v. Travelers Ins. Co., 448 Mass. 95, 102–03, 858 N.E.2d 746, 753 (2006).  In his

Motion for Summary Judgment, the Debtor failed to address the specific elements

required to establish such a claim.  He merely relied on the conclusory statement that

"the Plaintiffs' attempt at blocking Palladino's discharge falls under the 'malicious use of

process' category." Such a statement falls short of warranting summary judgment in the

Debtor's favor.  Because the Debtor failed to sustain his burden as to the absence of a

genuine issue of material fact as to his affirmative defenses, his Motion for Summary

Judgment is denied.

2. The Plaintiffs' Opposition and Cross-Motion for Summary Judgment

The Plaintiffs did not bring a cross-motion for summary judgment prior to the

September 13, 2016 hearing, although in "Plaintiff's [sic] Memorandum Re: Larceny

Guilty Pleas in State Court Requires Summary Judgment for Plaintiff [sic]," the Plaintiffs

assert that they are entitled to summary judgment with respect to Count II of the

Complaint.

The Court concludes that material facts necessary to resolve the issue as to Count

II of the Plaintiffs' Complaint are not in dispute.  The Debtor was indicted for two counts

a larceny, and one count of conspiracy, pled guilty and was sentenced to the House of

Corrections and probation.  Section 30 of the Chapter 266 governs criminal penalties for

larceny.  It provides in relevant part the following:

> (1) Whoever steals, or with intent to defraud obtains by a false pretense, or
> whoever unlawfully, and with intent to steal or embezzle, converts, or
> secretes with intent to convert, the property of another as defined in this
> section, whether such property is or is not in his possession at the time of

such conversion or secreting, shall be guilty of larceny, and shall, if the property stolen is a firearm, as defined in section one hundred and twenty-one of chapter one hundred and forty, or, if the value of the property stolen exceeds two hundred and fifty dollars, be punished by imprisonment in the state prison for not more than five years, or by a fine of not more than twenty-five thousand dollars and imprisonment in jail for not more than two years; . . .

<div align="center">***</div>

(5) Whoever steals or with intent to defraud obtains by a false pretense, or whoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another, sixty years of age or older, or of a person with a disability as defined in section thirteen K of chapter two hundred and sixty-five, whether such property is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny, and shall, if the value of the property exceeds two hundred and fifty dollars, be punished by imprisonment in the state prison for not more than ten years or in the house of correction for not more than two and one-half years, or by a fine of not more than fifty thousand dollars or by both such fine and imprisonment; . . .

Mass. Gen. Laws ch. 266, § 30(1) and (5). "To support a conviction of larceny under G.L. c. 266, § 30, the Commonwealth is required to prove the 'unlawful taking and carrying away of the personal property of another with the specific intent to deprive the person of the property permanently'" Commonwealth v. Mills, 436 Mass. 387, 394, 764 N.E.2d 854, 861 (2002) (citations and footnote omitted).   With respect to the crime of conspiracy under Mass. Gen. Laws ch. 274, § 7, "[w]hile no definition of conspiracy is provided by statute, a definition exists at common law: conspiracy is a 'combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose.'" Commonwealth v. Lonardo, 74 Mass. App. Ct. 566, 568-69, 908 N.E.2d 831 (2009) (citing Commonwealth v. Beneficial Fin. Co., 360 Mass. 188, 249, 275 N.E.2d 33 (1971), *cert. denied*,

407 Mass. 910, 914, 92 S.Ct. 2434, 2433, 32 L.Ed.2d 689 (1972), quoting from
Commonwealth v. Hunt, 45 Mass. 111, 4 Met. 111, 123 (1842)).

In view of the decision of the Supreme Judicial Court in Niziolek, in which the
court ruled that collateral estoppel does not apply conclusively to guilty pleas, the
question remains as to whether the Plaintiffs produced sufficient evidence to warrant the
entry of judgment in their favor on Count II.

Section 523(a)(4) of the Bankruptcy Code provides in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this
title does not discharge an individual debtor from any debt--

(4) for fraud or defalcation while acting in a fiduciary
capacity, embezzlement, or larceny;

11 U.S.C. § 523(a)(4). "A debtor need not be a fiduciary for a debt to be held
nondischargeable for larceny or embezzlement." Reilly v. Miano (In re Miano),
265 B.R. 352, 356 (Bankr. D. Conn. 2001) (citing Barristers Abstract Corp. v.
Caulfield (In re Caulfield), 192 B.R. 808, 818 (Bankr. E.D.N.Y. 1996)).  Moreover,
larceny for purposes of § 523(a)(4), is defined by reference to federal common law,
which requires establishment of the debtor's actual fraudulent intent in obtaining
the property at issue. Id. (citing Caufield, 192 B.R. at 818).  *See also* Orumwense-
Lawrence v. Osula (In re Osula), 519 B.R. 361, 378 (Bankr. D. Mass. 2014).  The
court in Treadwell v. Glenstone Lodge, Inc. (In re Treadwell), 459 B.R. 394 (Bankr.
W.D. Mo. 2011), compared larceny for § 523(a)(4) purposes and the state law crime,
stating the following:

32

> Larceny is the fraudulent and wrongful taking and carrying away of the
> property of another with intent to convert the property to the taker's use
> without the consent of the owner. As distinguished from embezzlement,
> the original taking of the property must be unlawful. For purposes of
> section 523(a)(4), a bankruptcy court is not bound by the state law definition
> of larceny but, rather, may follow federal common law, which defines
> larceny as a "felonious taking of another's personal property with intent to
> convert it or deprive the owner of same.'"
>
> In short, section 523(a)(4) excepts from discharge debts resulting from the
> fraudulent appropriation of another's property, whether the appropriation
> was unlawful at the outset, and therefore a larceny, or whether the
> appropriation took place unlawfully after the property was entrusted to the
> debtor's care, and therefore was an embezzlement.

459 B.R. at 406 (footnote omitted).  As this Court recognized in In re Osula, 519

B.R. at 378, "[l]arceny is the (1) wrongful taking of (2) property (3) of another (4)

without the owner's consent (5) with intent to convert the property." *See also*

Adamo v. Scheller (In re Scheller), 265 B.R. 39, 53 (Bankr. S.D.N.Y. (2001), and

Great Am. Ins. Co. v. Graziano (In re Graziano), 35 B.R. 589, 594 (Bankr. E.D.N.Y.

1983).  In order to establish an exception to discharge under § 523(a)(4), a creditor

bears the burden of proving each and every element by a preponderance of the

evidence. Rutanen v. Baylis (In re Baylis), 313 F.3d 9, 17 (1st Cir. 2002) (citing

Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

The Court concludes that the definition of larceny for purposes of state and federal

common law is the same, and the Debtor's admissions through his guilty pleas to larceny

and conspiracy, together with the exchanges between the Debtor and the judge during

the change of plea hearing establish the elements required to except the Plaintiffs' debt

from discharge. As the court stated in Billing Sys. Inc. v. Nee (In re Nee), 50 B.R. 268, 272

(Bankr. D. Mass. 1985), "[t]he grounds for nondischargeability of larceny or embezzlement under § 523(a)(4) are identical to those required to prove the crimes of larceny or embezzlement under Massachusetts law."

"A plea of 'guilty' is an admission of the material facts alleged in the complaint or indictment . . . and in so far as it amounts to an admission of facts material in the trial of a civil case in which the person so pleading is a party, it is admissible as evidence against him." Aetna Cas. & Sur. Co. v. Niziolek, 395 Mass. 737, 748, 481 N.E.2d 1356 (1985) (quoting Morrissey v. Powell, 304 Mass. 268, 269, 23 N.E.2d 411 (1939)).  The Court determines that the Debtor's guilty plea to the charges of larceny and conspiracy establish the elements of larceny under § 523(a)(4) and are fatal to his reliance on averments in his Affidavit filed with his post-hearing supplemental brief.  In that Affidavit, the Debtor made representations inconsistent with those made by the district attorney at his change of plea hearing,  Moreover, an exception to discharge under §523(a)(4) for larceny does not require false representations or the execution of promissory notes to investors, or even actual solicitation of funds from investors.  The Debtor pled guilty to the crime of conspiracy as well as larceny.  In addition, at his deposition, he admitted that his name was on a joint bank account with his co-conspirator, Steven Palladino, into which stolen funds were deposited.  Therefore, whether he personally solicited funds or signed promissory notes in favor of investors cannot obscure his admissions, through his guilty pleas, that he was a knowing participant in a Ponzi scheme to wrongfully take the Plaintiffs' funds without their consent and with intent to convert their property.  In this regard, it is helpful to highlight what the Debtor did not say in his Affidavit.  Although

he attempted to minimize his role in the Ponzi scheme, asserting he was a mere lackey for his father and Ernest Nasif, he did not say that he was unaware of the Ponzi scheme; he did not say that he did not profit from it. Indeed, the undisputed facts warrant the opposite conclusion.

Moreover, the focus of his Affidavit was the absence of misrepresentations to investors. In this regard, an exception to discharge for larceny under § 523(a)(4) does not require proof of misrepresentations, particularly given the nature of the larceny statute.

> The general larceny statute, G.L. c. 266, § 30, merges into one statutory crime "three common-law crimes of 'stealing'": larceny by theft, larceny by embezzlement, and larceny by false pretense. Commonwealth v. Mills, 436 Mass. 387, 391–392, 764 N.E.2d 854 (2002). "Larceny can be established by evidence that would have warranted a conviction upon any one of the three formerly separate charges." Id. at 392, 764 N.E.2d 854. Each theory of larceny has different required elements. Id. at 399, 764 N.E.2d 854.

Commonwealth v. Labadie, 467 Mass. 81, 87, 3 N.E.3d 1093, 1100 (2014), *cert. denied,* __ U.S. __, 135 S.Ct. 257 (2014). The admissions made by virtue of the guilty pleas establish larceny by theft. The Debtor attempts to minimize his status as a Director and Vice President of Viking and states that "he took no money from anyone." The Court finds those assertions inconsistent with his prior admission that money obtained through the Ponzi scheme was deposited into a joint bank account he held with his father.

In Argyle Online, LLC v. Nielson (In re GGW Brands, LLC), 504 B.R. 577 (Bankr. C.D. Ca. 2013), the court discussed the sham affidavit rule. The court stated:

35

> Although credibility determinations and weighing evidence are not
> appropriate when adjudicating a motion for summary judgment, the sham
> affidavit doctrine prevents a party who has been examined during a prior
> deposition from "rais[ing] an issue of fact simply by submitting an affidavit
> contradicting his own prior testimony," because it would "greatly diminish
> the utility of summary judgment as a procedure for screening out sham
> issues of fact." Yeager, 693 F.3d at 1080 (quoting Kennedy, 952 F.2d at 266).
>
> To trigger the sham affidavit rule, the Court must determine that: 1) the
> contradiction between the deposition and the declaration or affidavit is a
> sham, and 2) the inconsistency between the deposition testimony and
> subsequent affidavit is clear and unambiguous. Assuming these factors are
> met, the Court can disregard the declaration. Yeager, 693 F.3d at 1080. A
> non-moving party can attempt to explain or clarify prior deposition
> testimony and "minor inconsistencies that result from an honest
> discrepancy [or] a mistake" are insufficient to warrant application of the
> sham affidavit rule. Van Asdale v. Int'l Game Tech., 577 F.3d 989, 999 (9th
> Cir.2009).

In re GGW Brands, LLC, 504 B.R. at 613.   While invocation of this rule may not be

warranted in this case, the Court observes that the Debtor's Affidavit establishes

that the Debtor was involved in the Ponzi scheme.  He may not have orchestrated

it, but he was intimately involved in implementing it by "picking up and

delivering documents," making bank deposits," and writi[ing] documents relative

to the Notes for people who had asked to invest in Viking . . . . " In sum, he

benefitted from Ponzi scheme due to the deposits of money into a joint account

with his father.

**VII. CONCLUSION**

In view of the foregoing, the Court shall enter an order denying the Debtor's

Motion for Summary Judgment and granting the Plaintiffs' Cross-Motion for

Summary Judgment with respect to Count II.  The Debtor's debt to the Plaintiff,

Kenneth Nasif in the sum of $470,000 arising out of the Suffolk Superior Court action is excepted from discharge under 11 U.S.C. § 523(a)(4).[12]  Count I is moot.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  November 3, 2016

---

[12] Because Teresa Nasif was not named in the indictment, the Court shall enter an summary judgment in her favor as the Suffolk Superior Court judgment was entered by default.